**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **24-cr-10010-NMG;** |
| | ) | **24-cr-10021-NMG;** |
| | ) | **25-cr-10040-NMG** |
| GLENROY MILLER | ) | |

<u>**Sentencing Memorandum on Behalf of Glenroy Miller**</u>

## I.  <u>Introduction</u>

Mr. Miller accepted responsibility for his role in the 3 charged crimes – being involved in a fraudulent account case; selling firearms to cooperating witnesses, over a short period; and a theft of mail check cashing scheme. There is no statutory minimum sentence required in these cases. A period of isolation is obviously required given the plainly serious nature of the charges, and to send a message to Mr. Miller that this kind of criminal behavior will not be tolerated. Mr. Miller understands that he will serve significant time in a Federal prison based on his choices. On balance, Mr. Miller is an emerging adult whose capacity for rehabilitation has not been seriously tested previously. This is a case that requires a measured punishment that balances isolation from the public and rehabilitation in the community.

After careful consideration of the 3553(a) factors, including the nature of the offense and Mr. Miller's background circumstances, the he requests that the Court impose a <u>guideline custodial sentence</u> of **57 months custody followed by 3 years of supervised release under the terms and conditions outlined in the presentence report.** Equally as important as any

1

custodial sentence imposed in this case is the term of supervised release in the community. Simply put, Mr. Miller and the community require the support of United States Probation and all of ways it can hold him to account and provide concrete assistance through programming resources.

**II.    3553(a) Factors: History, Background, and Circumstances**

### A. Family and Upbringing

Mr. Miller grew up as the middle child in supportive extended family environment. His mother gave birth to Glenroy when she was very young. Her aunt (Glenroy's great-aunt) Lena became a steady and constant figure in his life, who helped to raise him since he was a small child. Despite love and the presence of many cousins, Mr. Miller acutely felt the absence of his father in his life. His older brother reflects on what it meant to his younger sibling to be without a father:

> Our family all be it average always had a sense of disconnect and now that I'm older I'm seeing it for myself. A loving family with the mind set of you go this way and ill go that way. In my brother's case I feel something he always longed for as he got older was a true family bond. I personally feel like my brother not having a father figure in his life really affected him, especially when he would see my father visit from time to time. As if he felt left out and as his older brother a part of me carries that weight, wishing I would have been there more. I myself only 6 years older than Glenroy was young at the time and I live life now thinking if I understood then what I understand now I truly could have helped change the direction of his life. Exhibit B.

Mr. Miller's father was in and out of jail throughout his childhood. His mother worked hard to raise her three children, with a focus on the importance of education and athletics. As a child, Mr. Miller loved going to school and showed an aptitude for sports, especially pop warner football starting at age seven. See, Exhibit A. His love of football continued into his teen years,

and he allowed himself to fantasize, hoping of one day going to Ohio State and then reaching the

NFL. His mother dreamed along with him, saving a newspaper clipping which featured him

playing for the West Roxbury Pop Warner team, his passion:



Page 12 **Roslindale and West Roxbury Transcripts**    Thursday, September 28, 2006

# Falcons split against Canton in Pop Warner a

**Teams hitting the road after next Sunday's games**

The Falcons welcomed the Bulldogs of Canton to the West Roxbury Education Complex for a full day of Pop Warner football on Sunday.

The C team pulled out off another win in a game highlighted by great defense on both sides. Evan Buczynski registered a lot of tackles. The Falcons' first touchdown of the day was run in by Porter Washington and capped by Michael Cronin's extra point.

Tyler Hallinan showed great gumption by stripping the ball from a Bulldog ball carrier, taking it back more than 60 yards to the end zone for the Falcons' second touchdown.

Canton made a valiant effort to even the score, but could only register a single touchdown. Enough credit cannot be give to the offensive and defensive lines that worked hard all game long.

The A team, consisting of 11- to 15-year-old players, was up next. Highlights included multiple long- and short-yardage gains attributed to Kevin Lowrie, Mike Hernandez and

Glenroy Miller charges up the field with the ball during a recent Falcons E level game in West Roxbury. The local Pop Warner teams are home this Sunday to face Milton.

Anthony Bullens.
Quarterbacks Dylan Chung

and Matt Barrakat, along with offensive linemen Nick Matt Kelly, center Jonatha

Scarangello, Dominic Must

Football was a refuge. Mr. Miller experienced violence in his community from a young

age. He recalls attending a birthday party for a friend's 2-year-old niece where two people ended

up shooting one another. PSR ¶ 100. More often, he witnessed robberies, shootings, and fights in

his neighborhood and describing them to Probation as "common." It was a treacherous

environment to experience, and to witness these kinds of events in a routine way.

Mr. Miller describes a loving and supportive upbringing, but his home life was also

3

infected by chaos, violence, and resulting trauma. The <u>shocking</u> details of what he witnessed is described in detail in the PSR at ¶101. Witnessing this level of domestic violence affected Mr. Miller in powerful ways, and it was during this time period that his life trajectory changed dramatically. The family moved to a shelter, the children changed schools, and Mr. Miller began getting into trouble in escaping his home life, and wanting role models, found them in the streets. His mother writes "…Getting himself in troubled situations...the streets became his life and we as family and friends tried to help him see a better light but for whatever reason it became him." Exhibit A. His brother reflects:

> That is where I believe he met the wrong people and began down the wrong path. I believe at the time he found the "family" he was looking for, the male role models he thought he needed in his life. To a point where he found himself getting into deep and it becomes his life. One thing I can say about my brother is I never felt like he brought his lifestyle to my home, or to family functions and that tells me he still has a respect for his family. The few discussions I've had with my brother recently have been positive, as I'm trying to get it into his head that the clock is ticking for him and the lifestyle he was living is not sustainable by any means. I believe in my heart he's hearing my words.    Exhibit B.

Mr. Miller's aspirations and influences became people in the streets who did not have his best interest at heart. His intelligence and capacity for creativity became exploited for criminal purposes, leading to DYS interventions, and eventually a path that led to adult criminal convictions. He had no role model for better behavior in a father, (who was incarcerated and inconsistently present when he was out), and no one to look up to in the series of abusive men who caused shocking violence and left behind trauma. PSR at ¶101.

Despite his past choices and the pain he has caused them, it is plain from the letters of support is that Mr. Miller comes from a deeply supportive family and current community, who reject the criminal choices he has made and know that he is capable of much more and want to

4

see the best for him. They describe a young man who shows great compassion for his family and neighbors, and who has the capacity to serve his community, rather than take away from it with similar crimes. His little brother writes: "I know my brother is a good person. When he talks to me on the phone, he makes sure I do good in school, I stay respectful to my mom, and to always stay focused on football. He always stresses the importance of staying out the streets and not following down the same bad path as him. When he comes home he wants to be my coach and I hope he gets the chance to." Exhibit E.

Perhaps the most significant and uncomplicated relationship he had as a child and into his adult years was with his great-aunt Lena. Her daughter, Mr. Miller's cousin, writes about the special bond they shared:

> My mother Lena, (Glen's Aunt) had developed Dementia in the past few years. Glenroy would call her daily to see how she was doing and share stories and laughs. He would bring her groceries, ask if she needed anything. Once or twice a week he would make a special trip to Chinatown to get her the noodle dish she loved or pick up an Italian sub and he made her very happy.    Glen with patience and kindness would sit and eat with her, serve her really, listen to her stories. Make her feel safe and protect her from her hallucinations. Exhibit C.

Mr. Miller lost his great-aunt while incarcerated in this case and was therefore unable to be physically present at her funeral with his family. He missed the graduation of his niece during this incarceration period as well. His brother writes "These are moments I know he knows he will never get back and he will have to live with that." Exhibit B.

### B.  Nature and Circumstances of the Offense

The offense conduct is presented in detail in the Presentence Report. Mr. Miller was involved in the sale of 6 firearms, ammunition, and MCDs to a cooperating witness between

August-October 2023, before he was arrested and held in continuous federal custody. See 1:24-CR-10010 PSR ¶ 13. He was later charged with his role in a bank fraud scheme that began in 2019 while he was incarcerated in an unrelated case; his then girlfriend (co-defendant Hendrix) worked at a credit union and helped process fraudulent loan applications on his behalf and on other unknown people's behalf. See 1:24-cr-10021; PSR ¶¶ 24-37. Finally, he was charged with his role in a theft of mail scheme that began in June 2023. See 1:25-CR-10040, PSR ¶¶ 38. Mr. Miller's involvement did not extend the full term of his co-defendants, until February of 2024 – he was involved prior to his arrest in October 2023.

The facts of these three cases require a serious intervention and sentence; here, a sentence of 57 months is certainly reflective of that necessity. Beyond the period of incarceration, for this defendant, the period of reintegration into the community is perhaps more crucial than the period behind bars. Here, there is an opportunity to connect Mr. Miller with needed services that could break the cycle of criminal activity and give him a chance to channel the efforts he spent in criminal behavior into something productive, like further education and job training, and become a productive member of the community.

III.   **Advisory Guideline Calculation; Discussion of the 3553(a) Factors and the Kinds of Sentences Available**

The Court must now balance these factors and consider the guidelines in determining what sentence is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). This statutory expression of the parsimony principle means, in the words of the First Circuit, that this Court must now "construct a sentence that is *minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added). This Court should "consider every convicted person as an individual and every case as a unique

study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Here, the 3553(a) factors as well as the application of the guideline sentencing range support a sentence that balances punishment and isolation with rehabilitation.

**IV.    The 3553(a)(2) Factors and Advisory Guideline Range Support a 57-month Sentence**
**A. Discussion of the Factors – Isolation, Deterrence, and Kinds of Sentences**

Here, the Presentence Report's final calculation is a total offense level of 23 with an advisory guideline range of 57-71 months. PSR at 36. Mr. Miller did not raise any objections with the calculation offered by Probation.

The first prong of 3553(a)(2) is about punishment. Time locked in a prison is certainly one way to afford punishment, and 48 months of custody is a significant amount of time. Selling firearms and placing them in the community is a serious offense and requires a period of isolation from the community to send a message of deterrence to the individual and to the community. Selling drugs, even in small amounts, is a serious offense. However, prison is not the only way to communicate and satisfy "punishment" to a particular defendant, and certainly not to this defendant, who has been through so much in his life up until this point. For Mr. Miller, a 57 month -year term of imprisonment is a progressive increase in custody from any other term previously imposed.

The second prong of 3553(a)(2) is about providing adequate deterrence. Here, a sentence of almost 5 years in a federal prison is a significant personal deterrant to Mr. Miller who has never served as significant a sentence before. Similarly, it is a significant sentence that sends a message to the community, that one's first federal offense can result in multiple years behind

bars, followed by supervision in the community.

The third prong is about protecting the public from crimes of the defendant. 18 U.S.C. § 3553(a)(2)(C). Mr. Miller is at a critical point in his life – vocational training and behavioral health intervention will serve the community better than warehousing him for years and then returning him to the public. Protection of the public can be better served by balancing a period of isolation with an equal hand towards a supported return to the community. Here, that can be accomplished by requiring rigorous conditions of supervised release, suggested by probation.

The fourth purpose of sentencing is "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Part of the responsibility of the sentencing court is to look to the kinds of sentences available that will help address the particular defendant, taking into account his individual needs. Here, perhaps the most significant part of the overall sentence is what happens following custody. Mr. Miller has experienced much trauma in his young life, without mental health treatment to process. These steps will help him and help protect the public. Participating in a cognitive behavioral therapy program will also assist in changing how Mr. Miller makes future choices.

His family will also help guide Mr. Miller by both holding him accountable, and supporting him:

> My son over the years has made poor decisions that hurt his family, himself and others and not in a day does it really justify the true person he is inside. If anyone was to sit down with him, you would see how intelligent and free spirited he actually is.He has so much family that loves and supports him and we will continue to support him.Glenroy needs a lot of healing from within and needs to believe he is so much better as a person than what is looked at. He will come home one day and we will be there to give him any support and love that he needs. Over the years he's always been there for so many now it's time for him to understand it's ok for him to help himself. I want to help guide him through this process by relocating and starting a new life, giving him a chance at life ..helping

8

him through the process of counseling for mental health and addiction..we love him very much and pray he comes home a better version of himself. Exhibit A.

A fair sentence must balance isolation from the community (punishment/protection of community/deterrence) as well as place a heavy emphasis on rehabilitation. Structured supervision is a crucial part of the sentence, and the portion of the sentence where he will be putting in the hard work, rather than sitting locked in a cell.   The 3553(a) factors and USSG support a sentence of 57 months incarceration, followed by 3 years of supervised release. This sentence reflects the seriousness of the offense, protects the public, and affords adequate deterrence generally and for Mr. Miller. Further, Mr. Miller will benefit from additional educational and vocational training. At 29 years old, he is at a crucial point where he must transition his life with the guidance and support of the federal probation office.

### B. Conditions of Supervised Release Are Tailored to Help Mr. Miller and Provide Safety Assurances to the Public

Mr. Miller proposes the following additional condition to be included in the special conditions of supervised release:1. Cognitive Behavioral Therapy

### V. Conclusion: 57 Months of Custody is a Sufficient and Serious Sentence

Under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2). Mr. Miller accepts full responsibility for the crimes alleged in the indictment. Mr. Miller will have the benefit of federal probation to help structure his release following imprisonment in this case. That may be the crucial step that helps Mr. Miller succeed in the world – by giving him support, and provides structure, accountability, and treatment. Not only will this help Mr. Miller but it will keep safe the community in which Mr. Miller lives. Mr.

Miller is ready to begin to prepare for such a transition – knowing full well that the requested sentence will require significant additional time in custody.

A sentence of 57 months, followed by rigorous and supportive conditions of release in the community, is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

Respectfully submitted,

*/s/ Cara McNamara*
Cara McNamara
B.B.O. 712096
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, Cara McNamara, Esquire, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on August 1, 2025.

 */s/ Cara McNamara*
Cara McNamara

10